Roy BLACK, Martin G. Weinberg, Richard Martinez, Christian Magluta, Albert J. Krieger, Susan Van Dusen, Scott Srebnick, L. Mark Dachs, Salvador Magluta and Augusto Falcon, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. 97–0387–CIV.

United States District Court,
S.D. Florida.

March 14, 1997.

512

Roy Black, Miami, FL, Albert Krieger, Miami, FL, for Plaintiffs.

Patrick Sullivan, Asst. U.S. Atty., Miami, FL, for Defendant.

## OPINION ESTABLISHING PROCEDURES FOR SECURING SEIZED MATERIAL AND ENJOINING DEFENDANT

JAMES LAWRENCE KING, District Judge.

This matter is before the Court for consideration of the relief sought on February 14, 1997, in the Plaintiff's emergency complaint for temporary restraining order and injunctive relief.

The procedural background set forth in the Government's memorandum of March 5, 1997, on the Plaintiffs' standing to contest the Government's search and seizure of the computers and disks at issue in this case, on February 11, 1997, accurately reflects what has occurred since the filing of the complaint in this case. It reads as follows:

"1. A search warrant was issued by Magistrate judge Turnoff for the premises at 12000 S.W. 49th Street, Miami, Fl., on February 10, 1997. It authorized the agents to search for and seize evidence of money laundering, obstruction of justice, drug trafficking, and bond jumping by Salvador Magluta, who had fled during his trial in case no. 96–341–Cr–Lenard. It was executed by federal agents the next day. Several computers and discs and diskettes were seized at the residence. A description of the whole premises is provided by one of the executing agents in the attached affidavit, marked as government's exhibit 1.

2. Soon after the search, attorneys for the defendant fugitive, Salvador Magluta, contacted the United States Attorney's Office and alleged that one of the seized computers contained privileged materials relating to defendant Salvador Magluta and his co-defendant Willie Falcon. The attorneys asked the United States Attorney's office to cease and desist from examining the computer. The United States Attorney's Office responded with a letter from Assistant United States Attorneys Sullivan and Lewis requesting additional information. That letter is marked as government's exhibit 2 and is attached hereto. No response was obtained. The United States Attorney's Office formed a "taint team" to examine all the computers and discs.

3. On February 14, 1997, the same attorneys filed an "Emergency Complaint," seeking a temporary restraining order and a preliminary injunction to prevent the Government from examining the computer, and seeking the imposition of a special master to examine the computer for privileged and non-privileged information.

4. On February 21, 1997, Magistrate Judge Garber orally ordered the government to cease any examination of any of the computers and discs, until he could conduct a hearing on the Emergency Complaint.

5. On February 24, 1997, the Government filed an appeal of the Magistrate Judge's oral order. It was heard by District Court Judge King the next day in Key West, Florida.

6. On February 25, 1997, the Government filed a motion to dismiss the Emergency Complaint, and a memorandum discussing the District Court's "anomalous" equitable jurisdiction over the matters raised by the Emergency Complaint.

7. On February 26, 1997, the District Court conducted a second hearing in Key West, Florida, on the above matters. At the conclusion of the hearing, the District Court directed that the parties file memoranda on the standing issues. This pleading is in compliance thereto."

The government concedes that the Plaintiff-attorneys "... for Defendants Magluta (Salvador Magluta) and Falcon (Augusto Falcon) may raise the attorney-client and work product privileges on the Defendant's behalf." *Fisher v. United States,* 425 U.S. 391, 402 n. 8, 96 S.Ct. 1569, 1577 n. 8, 48 L.Ed.2d 39 (1976), *United States v. Juarez* 573 F.2d

267 (5th Cir.1978), *In re Grand Jury Subpoena*, 831 F.2d 225 (11th Cir.1987).

The Government raises other objections to the Plaintiff-attorneys and their respective standings, to contest these seizures under the Fourth, Fifth, or Sixth Amendments to the Constitution.

The Government has consistently taken the logical position in the two hearings upon which the parties orally argued the merits of their respective positions, that there is a degree of urgency about resolution of the issues raised by this case. Specifically, the Government takes the position that since the primary focus of the gathering of evidence pursuant to the search warrant issued by Magistrate Judge William Turnoff on February 10, 1997, was to gather evidence concerning the whereabouts of fugitive Plaintiff Salvador Magluta, and that, therefore, delay in reviewing the seized information (if any) contained in the computers and disks will give the fleeing Plaintiff Magluta such a head start that the information will be rendered worthless.

The Plaintiffs submit that the seized computer information contains opinions and work product of the attorney Plaintiffs, protected from examination by the Defendant, its attorneys and agents, relying upon Fed.R.Crim.P. 41(e), the United States Constitution Amendments 4 and 6, 28 U.S.C. §§ 1331, 1356, 2201, and 2202, and the equitable jurisdiction of the United States District Court.

Plaintiff Richard Martinez, Esq. alleges that "... included on the hard drive of at least one of the computers is a data base containing a broad universe of materials that are the opinion and fact work-product of the attorneys/plaintiffs including, but not limited to, Attorneys Roy Black, Martin G. Weinberg, Richard Martinez, Albert J. Krieger, Susan Van Dusen, Scot Srebnick and L. Mark Dachs."

Further, the Plaintiffs allege that the seized data base includes legal memoranda, investigative reports, trial preparation materials, trial transcripts, witness interviews, and other materials that were generated by and for the joint defense of Salvador Magluta and Augusto Falcon in the matter of *United States v. Falcon, et al.*, 902 F.Supp. 234 (1995). Included as well are trial preparation materials which are the opinion and fact work-product of Attorneys Black, Weinberg and Martinez which were generated by and used for the preparation for the trial of *United States v. Magluta*, No. 96–341–CR–LE-NARD.

Plaintiffs filed this suit seeking to enjoin the Government from reviewing the computer materials, computers and computer disks by the United States until a determination can be made by a judicial officer as to which of the materials are (or may be) protected by the attorney-client relationship and the opinion and fact work product privilege.[1]

The suit, seeking this equitable relief, was commenced by Plaintiffs after being notified by the United States Attorney's Office on February 13, 1997, that the Government had created a taint team to conduct the review of seized materials.[2]

Plaintiffs recognize that some of the computer-stored information is not privileged

---

1. Originally, Plaintiffs sought the immediate return of all privileged materials seized under the warrant. In oral argument, counsel for the Plaintiffs asserted that they had access to all of the information and therefore, were primarily concerned with the scaling of the information as opposed to the need to have it returned for use by Plaintiffs.

2. A "taint team" is a name apparently applied to a person or persons designated by the Department of Justice to conduct a review of materials alleged to contain privileged information. In the case at bar, counsel for the Defendant advised the Court that an Assistant United States Attorney, not connected to the prosecutions of the Defendants Magluta and Falcon, had been designated to scan the computer hard drives and disks, to make a determination of whether or not the material was privileged, and to maintain the attorney-client work product privileged materials in a confidential manner. These materials determined to be privileged were not to be disclosed to prosecutors, agents or employees of the U.S. Attorney's Office currently involved in the pending cases involving Plaintiffs Magluta and Falcon. This procedure is sometimes referred to as "erecting a Chinese wall" between that part of the U.S. Attorney's Office directly involved with the prosecution of specific cases or specific individual defendants and the reviewing Assistant U.S. Attorneys.

and therefore protected.[3] Plaintiffs, however, believe that this procedure will not adequately protect the Plaintiff–Defendants or the Plaintiff–Attorneys, while the information that is otherwise privileged is separated from such information as may be contained in the computerized material that is not privileged and protected.

Plaintiffs urge the Court to follow the procedure established by Judge Hoeveler in *United States v. Abbell,* 939 F.Supp. 860 (1996), and appoint a special independent master to review the material and make a recommendation to the Court of what part of the material is privileged attorney-client information and what part is not.[4]

The Government strongly opposes the special master procedure urged by the Plaintiffs, on the ground that a two and one-half year delay in resolving the issue, coupled with the high cost of fees and expenses incurred by the special master, demonstrate that this procedure is both unworkable and unpractical.

The Government, however, objects to a review by the Court upon the ground that the Court would be placed in a difficult position of having to decide what information is contained on the computers about the various crimes that the United States is investigating.[5]

## I. LEGAL ISSUES

### A. Jurisdiction.

At the outset, it should be noted that able counsel have raised a veritable plethora of complex legal issues surrounding the complexities of modern day legal practice. In today's real legal world, the use of computerized equipment for the storage and exchange of sensitive confidential information has become commonplace. The advent of fax machines, e-mail, ready exchangeability of data stored on hard drives and floppy disks, require a re-thinking of some of the traditional approaches Courts have made in years gone by, to the protection accorded the work product of attorneys and the confidential communications of clients.

For reasons hereinafter set forth, the Court determines that it is neither practical nor prudent to accept counsels' invitation to visit all of the complex legal issues they have raised.

It is important, at this juncture in the case, to reach only those issues contesting the Court's jurisdiction; and, determination of a fair and prompt procedure for the parties to follow in the examination of the seized computerized information, for the obvious reason that delay in determining these issues renders everything moot.

For these reasons, the Court has determined that it will address the two issues of (a) jurisdiction and (b) implementation of procedural safeguards that protect the privacy and confidential interests of the Plaintiffs, while at the same time providing to the Government the information to which it is otherwise entitled.

---

**3.** The trial transcripts in *United States v. Falcon, et al.,* 902 F.Supp. 234, and *United States v. Magluta,* No. 96–341–CR–LENARD, being public documents of record, are obviously in this category. To the extent that these transcripts have been entered into the data bases of the computers, Plaintiffs have stated in oral argument that they do not seek to restrain the Government from examining those materials.

Counsel for Mr. Magluta agreed in oral argument February 25, 1997, that the Government is entitled to examine the information placed in the computer or on the computer disk by the fugitive Plaintiff Salvador Magluta. (Tr. page 10)

**4.** In the *Abbell* case, a search was conducted in September, 1994, of the offices of several attorneys, and in excess of 200,000 pages of materials were seized. In September, 1995, the trial judge ordered the documents reviewed by an independent special master to separate the work product privileged documents from those to which the Government had a proper right to inspect. As of the present time (March, 1997) this work has not been completed by the special master and the underlying criminal trial has been delayed for approximately two and one-half years.

**5.** The Government lawyers say that they wish to review the information for the criminal offenses of bond jumping, money laundering, drug trafficking and obstruction of justice. (Tr. page 34, page 60, 2/26/97 hearing)

## ANOMALOUS JURISDICTION [6]

The Government correctly points out that the Court should proceed with "caution and restraint" in the exercise of anomalous jurisdiction, citing *Di Bella v. United States*, 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962).

Of the four considerations this Court must address of (1) Plaintiffs' adequacy of their remedy at law, (2) irreparable injury, (3) need for the seized material, and (4) whether the Government has shown a callous disregard for Constitutional rights, the Court finds that the Plaintiffs do not in fact have an adequate remedy at law.

The Government suggests, in its motion to dismiss the complaint for lack of subject matter jurisdiction (Brief, page 4) that the Plaintiffs have an adequate remedy under Fed.R.Civ.P. 41(e) in one of the several criminal cases now pending against Plaintiffs Salvador Magluta and Augusto Falcon. This fails to address the problem of the Attorney–Plaintiffs who are not parties to those several pending criminal cases and therefore have no viable procedural means of raising the work product and attorney-client privilege on their own behalf. The attorneys for Salvador Magluta suffer an additional impediment in that their client is presently a fugitive and thus, possibly does not have standing to seek any relief while he is still a fugitive.[7]

Although this suffices to render appropriate the Court's exercise of anomalous jurisdiction, the Court notes parenthetically that the procedure recommended by the Government could well cause irreparable injury to the Defendant United States, in that the processing of Rule 41(e) motions in the respective criminal cases now pending before Judges Moreno and Lenard, would probably delay the delivery of that part of the seized computerized information to which the Government is, or may be entitled, to a point in time longer than the resolution of this issue under the procedures hereinafter outlined.

Obviously, the matter of what the Government is entitled to review, and what the Plaintiffs are entitled to have protected from review, must come before the Government proceeds further with any examination of the seized material. To simply say "let the Plaintiffs raise these issues under Rule 41(e), when the issue presents itself down the road a piece", would have no meaning if the Government were able to review the materials in the meantime. In plain words, when the cat's out of the bag, there is no further need for finite legal determinations of who is entitled to what.

Lastly, as a practical matter, all parties agree that a great deal of the evidence contained in the computerized records may properly be disseminated to the Government forthwith. To determine what part of the computerized information contains matters of public record, like trial transcripts or the computerized input of the Defendant Salvador Magluta of a non-privileged character, the computers and material contained on the computer disks must be reviewed and examined immediately. The only real issue is how is this to be performed?

---

6. Anomalous jurisdiction is a non-statutory jurisdiction governed by equitable principles. *Hunsucker v. Phinney*, 497 F.2d 29 (5th Cir.1974); *Lord v. Kelley*, 223 F.Supp. 684 (D.Mass.1963). This non-statutory jurisdiction has been described as "exceptional," *Hunsucker v. Phinney* at 32, and actions brought pursuant thereto, whether brought under Rule 41(c) or general equitable jurisdiction, are governed by equitable principles. *Richey v. Smith*, 515 F.2d 1239 (5th Cir.1975).

7. The parties, at the request of the Court, have diligently prepared thorough and well written briefs on the issue of the standing of the Plaintiffs to raise the issues in this suit. The Court does not propose to resolve this issue in this opinion, given the time constraints and necessity of the issuance of an immediate decision, leaving for another day the question of whether or not those case decisions of the Supreme Court of the United States and Courts of Appeal, giving a defendant the right to *defend* civil forfeiture proceedings brought against him while he is in a fugitive status can be used to seek affirmative relief from the Government or others where he is the plaintiff (i.e., bringing the action and seeking the relief). We are all aware of those cases holding that a defendant forfeits the right to prosecute an appeal, the right to be present at a trial while he becomes a fugitive after the trial has commenced, and other examples of a fugitive defendant's loss of constitutional rights.

The Court therefore determines that under the unique circumstances of this case, namely that the Government has an urgent, immediate need for the information to which it is entitled and the Plaintiffs' have need to safeguard and protect the vitally important constitutional guarantees of confidentiality flowing from work product and attorney-client privilege concepts, the Court concludes that it should exercise its discretionary equitable authority to proceed with an adjudication of the issues raised by this case. The Court has jurisdiction.

### PROCEDURES FOR REVIEW OF THE SEIZED COMPUTERIZED INFORMATION

As set forth above, the Defendant United States suggests that a review by Assistant United States Attorneys unconnected with the pending prosecution of Plaintiffs Magluta and Falcon (a taint team) is appropriate. The Plaintiffs suggest that a special master, or perhaps a neutral judicial officer, be designated to review the material prior to any disclosure to prosecutors, federal agents or the Department of Justice.

The Plaintiffs have a serious concern that disclosure to taint team prosecutors would not protect the confidentiality and privacy rights they here assert. Recognizing that this approach has been utilized by several courts in the past the Court nevertheless concludes that procedures hereinafter outlined (given the urgency of the facts of this case) will assure a fair and proper balance between protection of Constitutional rights and proper disclosure.

■ A special master procedure utilized in *United States v. Abbell,* for the reasons already set forth in this opinion, takes too long and costs too much. It would effectively deprive the Government of any access to any of the seized information. Given the fact that all parties agree that at least a part of the information on the computers and disks should be given to the Government, it makes

imminent sense for this to be accomplished as soon as possible so that the Government may not be hampered in its responsibility to locate the fugitive Plaintiff Magluta.

The Government's submission at oral argument on February 26, 1997 at the United States Courthouse in Key West, Florida was lukewarm to the suggestion of the Court that the parties consider either a U.S. judge or magistrate reviewing the material and making a determination of what is properly disclosable.[8]

The Court, however, concludes that the best way to achieve a fair balance of the respective rights of the parties is for a United States district judge or his designee to review the material and make a *prompt* decision on the issues.

To implement this, it is

ORDERED, ADJUDGED and DECREED as follows:

1. The parties shall forthwith consult and agree upon a method for preparing a printed transcript/report of the material contained in the computers and on the computerized disks that were seized on February 11, 1997.

2. As part of this agreement, the parties shall insure that the computers and disks shall have been in a sealed condition to this point in these proceedings, and remain sealed except for use by the person or entity that is reducing the computerized material to a written transcript. Said person or entity is hereby enjoined, under penalty of contempt, from disclosing the information that is printed out from the computers and computer disks to any person other than to this Court. This includes disclosure to either the Government, the Plaintiffs or any of their attorneys, employees or agents.

3. The written document of the information contained on the computers shall be delivered to the Court in a sealed condition as rapidly as possible and on an expedited basis.

---

8. "I don't believe it would be workable, your Honor, because we would have to take the judicial officer out of his regular duties and advise him of years of government investigation into these matters. It is going to be, one, very diffi-

cult for the magistrate to put himself in the position of an investigator to do that; two, it takes him out of his regular role of being a magistrate in this district." (Tr. page 62)

4. It shall not be necessary for the person doing the transcribing from the computers to the written material to include matters the parties agree upon as being part of the public record. For example, no transcription of the computer information regarding a transcript of the trials involving Plaintiffs Magluta or Falcon need be made. Each side, presumably, already possesses this information. Additionally, subject to the parties' agreement, any other portion jointly designated may be left out of the transcript.

5. After the person or entity has transcribed the material into written form, the disks and computers will be returned in a secured and sealed position to agents of the federal government designated by Defendants' counsel, with the injunction that they are not to be inspected or reviewed by anyone whomsoever without further order of the Court.

6. The parties shall take such steps as may be necessary to preserve the integrity and custody of the computers and disks in order that they may, if subsequently needed, be in an unbroken chain of custody for evidentiary purposes at trial. To this extent, the Court envisions that it may be necessary for an agent of the Defendant and a representative of the Government to physically monitor the transcription of the computerized information by the person or agency selected by the parties to compile the written record.

7. The parties shall file, by 5:00 p.m. Monday, March 17, 1997, a written report with the Court, outlining the agreements they have reached for the preparation of this transcript with a firm estimated date of completion by the transcriber. If for any reason the parties are unable to agree, the Court will designate a person or agency to review the computerized material and prepare the record.

8. Other than disclosure herein authorized of the seized computers, disks, and information contained thereon, the Defendant United States of America, its attorneys, agents and employees are hereby enjoined, until further order of Court, from the inspection, copying or dissemination of the seized computers and material to any person, agency or entity.

After receipt of the written record, the Court will devote whatever time is necessary, and secure whatever assistance may be needed, to promptly resolve the issues and concerns of all parties.